**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GERARD E. ELLIOTT,

     Plaintiff,

v.                                                                      CASE NO. 14-10870

COMMISSIONER OF                          DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,

     Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [18] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [20]**

Plaintiff Gerard E. Elliott appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his claim for a period of disability and disability insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[1] (Dkt.# 18, 20.)

**A.      Procedural History**

Plaintiff filed an application for a period of disability and DIB on April 13, 2011, alleging that he became unable to work on October 1, 2010. (Transcript, dkt.# 12 at 135-38, 181.) Plaintiff's claim was denied at the initial administrative stages. (Tr. 77-85.) On April 19, 2012, Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Kevin W. Fallis, who considered the application for benefits *de novo.* (Tr. 34.) In a decision dated June 27, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of

---

[1]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

the Social Security Act at any time from October 1, 2010, through the date of the ALJ's decision. (Tr. at 29.) Plaintiff requested Appeals Council review of this decision. (Tr. 17-18.)

The ALJ's decision became the final decision of the Commissioner on August 10, 2013, when the Appeals Council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004); (tr. 8-12). On February 25, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d

2

524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## C.   Governing Law

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his]

4

RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. § 404.1520(a)(4)(v), (g).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since October 1, 2010. (Tr. 24.) At step two, the ALJ found that Plaintiff's coronary artery disease status post-angioplasty and stent placement and chronic lumbar spine pain were "severe" within the meaning of the Social Security regulations. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform work at the light[2] exertional level with the following limitations:

> [The claimant can] lift up to 20 pounds occasionally; lift and carry up to 10 pounds frequently; stand and walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. Except he can never climb ladders, ropes, or scaffolds and only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. The individual has the ability to use his bilateral hands for frequent handling of objects, defined as gross manipulation. There is the need to avoid even moderate exposure to extreme cold, extreme heat, and wetness or humidity and they (sic) must avoid all exposure to excessive vibration, all use of hazardous moving machinery, and all exposure to unprotected heights. (Tr. 24-25.)

At step four, the ALJ found that Plaintiff could not perform any of his past relevant work as a heavy equipment operator (semi-skilled and light in exertion), a delivery driver for a septic

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

5

service (semi-skilled and very heavy in exertion), or an industrial cleaning laborer, general laborer or grocery store stocker (all unskilled and light in exertion). (Tr. 28, 70.) The ALJ found that on the alleged onset date of disability, Plaintiff was 52 years old, defined in the Regulations as an individual "closely approaching advanced age," has a limited education and is able to communicate in English. *See* 20 C.F.R. §§ 404.1563(d), 404.1564(b)(3); (Tr. 28-29.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (Tr. 29.)

### E.   Administrative Record

Plaintiff was 52 years old on the alleged onset date.  (Tr. 78.) Plaintiff testified at the hearing that he has a ninth grade education and can read, write, add and subtract. (Tr. 41-42.) He last received unemployment benefits in June 2011. (Tr. 42-43.) Plaintiff testified that his last job was running two automated welding machines. He explained that the job lasted approximately three weeks until he was let go because he could not keep up with production. (Tr. 43.) He also testified that during the summer of 2010 he worked for a septic service delivering portable toilets. (Tr. 46.) He has a driver's license and drives a couple of times a week. (Tr. 40-41.) He testified that he can no longer work following a mini-stroke he had in May 2010, after which time his work hours were cut in half because he was "struggling." (Tr. 51.) He described getting chest pains on exertion, shortness of breath on exertion and leg pain with standing. (Tr. 51- 52.) He testified that in February 2012 he had a heart attack and underwent a cardiac catheterization. (Tr. 52-53.) He described being anxious at home at least once a month when he gets the bills. (Tr. 67.)

6

At the time of the hearing, Plaintiff lived in a single story home with his wife and two children. (Tr. 38-39.) Plaintiff testified that he had gained about 25 pounds in the couple of years prior to hearing because he reduced his smoking and was trying to quit. (Tr. 39-40.) Plaintiff testified that his medications seem to make him "fatigued" yet unable to sleep. (Tr. 48.) He later explained that he sleeps about five hours per night and takes at least two naps per day for roughly one hour. (Tr. 50.) He does a little cooking at home and his own laundry, reads the newspapers and has no problems taking care of his personal hygiene. (Tr. 60-62.)

He testified that based on his doctor's restrictions he is able to lift about ten pounds. (Tr. 53-54.) He explained that he can only sit about 15 minutes before the small of his back is sore and his legs start to tingle and that he has had problems with his back for the past five years, with pain about once a week. (Tr. 56-57.)  He testified that he can stand in one position for about 15 to 20 minutes and walk for about 5 minutes and his arms tingle sometimes, for example, if he puts his elbows on a table, yet he has not discussed this issue with his doctors. (Tr. 58-59.)

A complete review of the record shows that Plaintiff underwent a left cardiac catheterization, coronary angiogram and left ventriculography on February 29, 2012, following an episode in which he reported coffee-ground-like emesis.  (Tr. 391.) He was diagnosed with non-ST elevation myocardial infarction. (Tr. 396.) Plaintiff has a history of coronary artery disease: He had two stents placed in 2004, an angioplasty and stent in 2005, and a history of diagnoses of hypertension, dyslipidemia and transient ischemic attack (TIA). (Tr. 306-10, 328-30, 391.) In records from February 29, 2012, it was noted that Plaintiff "has not seen a cardiologist since 2009" and Plaintiff denied chest pain (other than an episode occurring about two weeks prior), shortness of breath, joint pain, muscle pain or back pain. (Tr. 391-92.)

7

The records from prior to the alleged onset date show that following the 2005 stent, stress testing in 2006 was negative, with "normal underlying left ventricular systolic function and no evidence for exercise induced myocardial ischemia or arrhythmia." (Tr. 347.) Similarly, 2007 stress testing was negative "with excellent exercise tolerance." (Tr. 343.) A January 25, 2010 stress test revealed an "ejection fraction of 68% with normal contractility and thickening" and "no evidence of inducible ischemia." (Tr. 285.)

In June 2010, Plaintiff complained of an episode of left arm weakness and vision disruption, lightheadedness and dizziness. (Tr. 264.) A June 4, 2010, CT of the head was negative and revealed no evidence of hemorrhage, hematoma or infarct, no active process and normal cranium, sella and sinuses. (Tr. 273, 275-77, 281.) It was diagnosed as a TIA. (Tr. 276.) His hypertension was noted to be "well controlled" and an impression of "anxiety" was noted. (Tr. 276.) June 2010 duplex arterial Doppler studies of the carotid vessels were "grossly normal." (Tr. 278.) The June 2010 EKG and EEG were normal. (Tr. 243, 264.) Stress testing revealed a left ventricular ejection fraction of 65% and normal diastolic function. (Tr. 247-50.) The report also noted that mild left ventricular hypertrophy, mild mitral regurgitation and mild tricuspid regurgitation were present. (Tr. 243, 247-49.)

On August 31, 2010, Plaintiff reported to his doctor Curt Coulter, D.O., with back pain that had lasted one week. (Tr. 259-60.) He denied a "recent injury" yet reported an injury about 10 years prior, without having had consistent problems over the past 10 years. (Tr. 259.) He "described occasional radicular pain but no numbness or tingling," as well as some muscle spasms. (*Id.*). He reported that sitting exacerbates the "problem as does rising from sitting to standing." (*Id.*) He was diagnosed with low back pain and prescribed Vicodin and Amrix and given a Depo Medrol injection. (Tr. 260.)

8

March 7, 2011 treatment records show that Plaintiff reported sudden onset of back pain after pushing and lifting at home; the record notes that he injured his back three days prior while shoveling snow. (Tr. 254.) The records were signed by Dr. Coulter. Plaintiff was diagnosed with low back pain, prescribed Vicodin and counseled "regarding regular sustained exercise for at least 30 minutes, 3-4 times per week," medication use, diet and weight loss, regular health checks and testing, and ways to prevent low back pain. (Tr. 254-57.) Medical records from February 18, 2011, show that Plaintiff was out of Plavix and was seeking assistance in replacing the prescription until he got paid and could fill the prescription. (Tr. 258.)

At the hearing, the ALJ asked the vocational expert ("VE") to consider an individual of Plaintiff's age, education and work experience who is able to perform light work as follows:

> [L]ift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently; stand/walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks.

> This individual could never climb ladders, ropes or scaffolds. They (sic) could occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch and crawl. They would be limited to frequent bilateral handling of objects. They would have to avoid even moderate exposure to extreme cold, extreme heat and to wetness or humidity.

> . . . [T]hey would have to avoid all exposure to excessive vibration. They would have to avoid all use of moving machinery, hazardous, moving machinery and all exposure to unprotected heights. (Tr. 71.)

The VE testified that such an individual could not perform any of Plaintiff's past work. (Tr. 72.) The VE testified that such an individual could perform the following jobs within the region defined as "the lower peninsula of the state of Michigan": unskilled office clerk (4,500 jobs), inspector (3,000 jobs), and bench assembly positions (2,000 jobs). (*Id.*)

9

The ALJ then asked the VE to consider the same individual as the prior hypothetical question with the following additional restrictions: "The lifting restrictions would be the same, . . . . However, this individual can only stand/walk for about two hours. They'd be able to sit for up to six hours in an eight-hour workday with normal breaks." (*Id.*) The VE testified that this would reduce the numbers of the prior occupations and jobs to 1,500 unskilled office clerk jobs, 1,200 inspector jobs, and 1,000 bench assembler jobs. (Tr. 72-73.)

For the third hypothetical question the ALJ asked the VE to add the following restrictions to the prior questions: "[T]his individual would be off task 20 percent of the day in addition to the regularly scheduled breaks." (Tr. 73.) The VE testified that there would be no jobs available for such an individual. (*Id.*) Finally, the ALJ asked to what effect if, in addition to the previous hypothetical questions, the individual were absent from work two days per month. (*Id.*) The VE testified that there would be no jobs available. (*Id.*) Plaintiff's attorney asked questions of the VE. In response, the VE testified that an individual limited to lifting ten pounds or less would be limited to jobs with a sedentary classification and would be unable to perform the jobs to which the VE had previously testified. (Tr. 73-74.) Furthermore, a limitation to standing and/or walking only two hours and sitting two hours out of an eight-hour day would equate to less than full-time work. (Tr. 74.) The VE testified that typically an employee would be allowed two 15-minute breaks and one lunch hour during the workday and agreed that unscheduled breaks beyond that would be work-preclusive. (*Id.*)

## F.    Analysis

Plaintiff contends that the ALJ's RFC is not "accurate" and therefore the finding at Step Five is erroneous. Plaintiff also argues that the ALJ failed to properly consider and weigh the opinion of Dr. Coulter, Plaintiff's treating doctor.

10

**1.     Whether the ALJ Properly Considered the Treating Physician's Opinion and Explained the Weight Given To It**

Plaintiff argues that the ALJ erred in failing to give Dr. Coulter's opinion controlling weight. "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p.

Dr. Coulter completed a Cardiac Residual Functional Capacity Questionnaire dated March 23, 2012. (Tr. 384-87.) Dr. Coulter reported that he has treated Plaintiff "[t]wice yearly to twice monthly as needed since [July 2008]." (Tr. 384.) Dr. Coulter noted a diagnosis of Stage III heart disease with a "good" prognosis. (*Id.*) He noted that Plaintiff has symptoms of chest pain, anginal equivalent pain and fatigue and suffers anginal pain rarely, "less than once every 6 months." He reported a history of TIA, hypertension, myocardial infarcts and anxiety, with stents and cardiac catheterization. (*Id.*) Dr. Coulter opined that Plaintiff can walk 1 city block or 50 yards without rest or severe pain, he can sit less than two hours and stand and/or walk less than two hours in an 8-hour workday and needs a job allowing him to shift positions from sitting, standing and walking at will. (Tr. 385-86.) He opined that Plaintiff would need 15-minute unscheduled breaks occurring twice daily or twice weekly. (Tr. 386.) He opined that plaintiff could only occasionally lift less than 10 pounds, rarely lift 10 pounds, never engage in twisting, stooping, bending, crouching/squatting, or climbing ladders and may only occasionally climb stairs. (*Id.*) He must avoid even moderate exposure to extreme heat or cold, high humidity, wetness, cigarette smoke, perfumes, solder fluxes, solvents/cleaners, fumes, odors, gases, dusts, chemical and "any other" irritants. (*Id.*) Finally, Dr. Coulter opined that Plaintiff was likely to be absent from work about four days per month. (Tr. 387.) Plaintiff

11

argues that because there are no other medical opinions of record regarding Plaintiff's physical limitations and Dr. Coulter's opinion is uncontradicted, it should have been given controlling weight.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." 20 C.F.R. § 404.1502. "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p; *see also Rogers*, 486 F.3d at 242. "[A] failure to follow the

12

procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight to give the opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p.

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner . . . ," i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. *See* 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.* In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," for example, he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon*

13

*v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)).

Neither the parties nor the ALJ deny that Dr. Coulter is a "treating" physician. (Dkt.# 18, 20, tr. 26-27.) Defendant argues that Plaintiff only generally alleges that the doctor's opinion should be given controlling weight because it is not contradicted by another medical opinion and that Plaintiff fails to identify or address the ALJ's specific reasons for discounting the doctor's opinion. While Plaintiff is correct that there are no other medical opinions in the record regarding his physical functional limitations, this does not require the ALJ to give unequivocal controlling weight to a sole opinion. As set forth above, the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c)(2).

The ALJ gave specific reasons for discounting Dr. Coulter's opinion. The ALJ found that Dr. Coulter's opinion that Plaintiff could not lift more than 10 pounds was both unsupported by objective medical evidence and directly contradicted by other evidence of record. (Tr. 27.) The ALJ pointed out that the 10-pound limitation was not the result of formal rehabilitation testing. While this is not a requirement to establish functional limitations, substantial contradictory evidence of record supports the ALJ's conclusion. In a Function

14

Report dated May 16, 2010[3], Plaintiff reported problems with only lifting and stair climbing and that he was able to "lift only about 25 lbs." (Tr. 173-78.) The record contains a post-procedure discharge form dated February 29, 2012 following Plaintiff's left heart catheterization, which limited Plaintiff's exertional activities, including lifting no more than 10 pounds, yet the limitation was advised for only "7-10 days." (Tr. 420.) The limitation was not indefinite.

The ALJ also pointed out that Plaintiff reported more activities of greater duration in his Function Report than at the hearing, including cutting the grass for approximately 4 hours. (Tr. 27, 175.) He also reported cooking meals that took from 10 minutes to as long as four hours to prepare. (Tr. 175.) In March 2011, Plaintiff complained of back pain after shoveling snow and Dr. Coulter did not recommend restrictions. On the contrary, the doctor recommended that Plaintiff perform regular, sustained exercise. (Tr. 256-57.)

The ALJ pointed out a lack of support for Dr. Coulter's opinion that Plaintiff would miss four days of work per month. The ALJ relied on the relative infrequency of Plaintiff's cardiology symptoms, treatment and follow-up, as well as evidence showing that Plaintiff was stable when taking his medications and the lack of specific cardiac monitoring. (Tr. 27.) The ALJ also noted that Plaintiff did not complain of shortness of breath to his physician. (Tr. 254.) Even after the snow-shoveling episode, it was noted that Plaintiff had "[n]o chest pain, denies chest pressure, no palpitations, no edema." (*Id.*; see also 259, 261.) At a January 2010 appointment, Dr. Coulter noted Plaintiff's report of occasional chest tightness and mild chest

---

[3]Both the Function Report and a Work History Report completed by Plaintiff bear the handwritten date "5-16-2010." (Tr. 170, 180.) Both Reports would have been completed in 2011, not 2010. Plaintiff's protective filing date of application was April 13, 2011, and the record is consistent in noting that he had filed no previous applications. (Tr. 135, 181.) The enclosure letters from when the Work History Report form and Function Report form were sent to Plaintiff both bear the date May 11, 2011, consistent with the Reports having been completed shortly thereafter and not a year prior. (Tr. 162, 172.)

pain yet complaints of chest pain are infrequent in the record. (Tr. 268.) The  ALJ properly explained the weight he gave to the doctor's opinion, gave good reasons for declining to give Dr. Coulter's opinion controlling weight, and substantial evidence in the record supports the ALJ's findings.

### 2.    Whether the ALJ's RFC and Resultant Step Five Findings Are Supported By Substantial Evidence

Plaintiff argues that the ALJ's RFC is not accurate and, as a result, the step five finding is not supported by substantial evidence. Despite a recitation of the medical evidence fact section in his argument, the substance of Plaintiff's argument appears to be that the RFC was deficient because the ALJ did not give controlling weight to Dr. Coulter's opinion, specifically, limitations regarding walking, sitting and work-preclusive absences. (Dkt.# 18.)

As set forth above, the ALJ gave good reasons for discounting Dr. Coulter's opinion, including the 10-pound weight limitation, and based it in part on a lack of objective medical evidence, documented signs and symptoms, and Plaintiff's report that he could lift 25 pounds. The ALJ restricted Plaintiff to lifting up to 10 pounds frequently and up to 20 pounds only occasionally, which is less than Plaintiff reported he could lift.

The ALJ also limited Plaintiff to a reduced range of standing and/or walking: two hours of an eight-hour workday. (Tr. 24.) The ALJ specifically addressed Plaintiff's allegation that chronic back pain affects his ability to walk, stand and sit. (Tr. 27.) Dr. Coulter had noted that Plaintiff could sit for less than two hours and walk and/or stand less than two hours. The ALJ noted that treatment for back pain was only intermittent and conservative. The RFC limitation on standing and/or walking takes into account some of Plaintiff's reported symptoms, including chest pain on exertion and a need to rest when exerting, yet the ALJ also cited records

16

showing that even when Plaintiff complained of back pain in August 2010, just prior to his alleged onset date, his gait and station were normal on examination. (Tr. 25, 26, 259.) This was consistent with a March 2011 examination following complaints of back pain after shoveling snow. His gait was reportedly "intact" and station and posture were normal. (Tr. 255.) In a February 29, 2012 physical report prior to Plaintiff's cardiac catheterization procedure, the doctor noted that Plaintiff denied joint, muscle and back pain, numbness, tingling or weakness, as well as shortness of breath. (Tr. 392.) The ALJ also considered Plaintiff's activities of daily living including his report that he cuts the grass and it takes four hours. (Tr. 27, 175.) In the same Function Report Plaintiff identified problems with only lifting and stair climbing, despite options on the same Report to indicate difficulty with walking, sitting and standing. (Tr. 178.)

Plaintiff argues that at an August 31, 2010 examination for complaints of back pain, he reported that sitting and rising from sitting to standing exacerbated his problem. (Tr. 259.) Yet there is no objective medical or other evidence that Plaintiff's August 2010 complaints persisted to an extreme that would prevent him performing the six-hour sitting limitation set forth in the RFC. Other than Dr. Coulter's opinion that Plaintiff can only sit less than two hours in an eight hour work day, as the ALJ pointed out that with respect to Plaintiff's back pain, there is no diagnosis or other evidence to support such extreme limitations.

The ALJ's RFC limitation to no more than occasional stair climbing is consistent with Dr. Coulter's opinion, as are limitations on exposure to extreme cold, heat, wetness and humidity and no ladder climbing. (Tr. 178, 386.) As discussed above, the ALJ gave good

17

reasons for discounting Dr. Coulter's opinion and limitations, including that Plaintiff would miss four days of work per month, and did not include this limitation in the RFC.

The ALJ's RFC is supported by substantial evidence. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so[4]. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform a significant number of jobs in the economy. The ALJ's findings at step five are supported by substantial evidence.

## G.    Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law and it is supported by substantial evidence. For the foregoing reasons, Plaintiff's Motion for Summary Judgment (dkt.# 18) is DENIED, that of Defendant (dkt.# 20) is GRANTED and, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

---

[4] Defendant correctly points out that Plaintiff offered "no argument regarding the ALJ's consideration and weighing of his testimony" and did not raise credibility as an issue. (Dkt.# 20.) It is, however, worth noting that the ALJ properly discussed Plaintiff's credibility and the extent of his symptoms and resultant limiting effects pursuant to the Regulations. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-4p and 96-7p. The ALJ considered multiple factors, including the nature of Plaintiff's allegations of pain, surgical and pharmaceutical treatment and effectiveness, the disparate reports regarding side effects from medication, the frequency of treatment, and activities of daily living, as well as specific variations in reported ability to perform such activities such as lifting, cutting grass, cooking and using the computer. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); (Tr. 25-28). The ALJ's findings are supported by substantial evidence.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 3, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 3, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager